1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN  DIVISION

10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| ERLINDA L. SANCHEZ,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commisioner<br>Social Security Administration,<br><br>    Defendant. | ED CV 09-00305-SH<br><br>MEMORANDUM DECISION |

## **I. Introduction**

This matter is before the Court for review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. § 1381 *et seq*. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned.  The action arises under 42 U.S.C. § 45(g), which authorizes this Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The

1

plaintiff and defendant have filed their pleadings and the defendant has filed a certified transcript of the record ("AR").  After reviewing the matter, this Court concludes that the decision of the Commissioner should be affirmed.

## II.  **Proceedings**

Plaintiff filed an application for SSI benefits on April 5, 2004, alleging an onset of disability on that date.[1]  An Administrative Law Judge ("ALJ") denied plaintiff's application in a written decision dated January 17, 2006 [2] ("2006 ALJ Decision").  (AR 43-51).  Plaintiff sought review of the 2006 ALJ Decision and this Court affirmed the denial of benefits in an order entered on November 27, 2007.[3]

Plaintiff's most recent filing for SSI benefits was on February 9, 2006, alleging disability beginning in 1996.  On February 6, 2008, an ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act ("2008 ALJ Decision").  (AR 8-16).  Following the Appeals Council's denial of plaintiff's request for review, plaintiff again filed an action in this Court.

Plaintiff makes six challenges to the 2008 ALJ Decision denying benefits.  Plaintiff alleges that the ALJ erred in (1) failing to properly consider the treating psychiatrist's opinion; (2) failing to properly consider the consultative examiner's opinion; (3) failing to consider the State Agency's findings; (4) failing to comply with Social Security Ruling ("SSR") 96-7p regarding the type, dosage, effectiveness and side effects of the plaintiff's medications; (5) failing to properly consider the plaintiff's mental residual functional capacity ("RFC"); and (6) failing to pose a

---

[1] Originally plaintiff had stated that her onset date was January 1, 1996; however, at the September 22, 2004 hearing, she amended her onset date to April 5, 2004 under the advice of her attorney.

[2] Plaintiff has been denied SSI benefits roughly seven times over the past fifteen years and has received at least four unfavorable decisions from an ALJ.

[3] This was plaintiff's third appearance in this Court. Her past two appeals are as follows: May 8, 2002, resulting in a remand (02-cv-00441); May 18, 2004, decision affirmed (04-cv-00580).

1   complete hypothetical question to the vocational expert ("VE").

2           Each of plaintiff's contentions will be addressed in turn.

3   **ISSUE No. 1:**

4           Plaintiff alleges that the ALJ failed to provide specific and legitimate reasons

5   for rejecting the opinions of plaintiff's treating psychiatrist, Dr. Nguyen.

6   Defendant maintains that Dr. Nguyen's opinions were neither relevant nor legally

7   persuasive, thus the ALJ did not have to give reasons for rejecting them.

8           The ALJ is to accord the greatest weight to a treating physician's medical

9   opinion.  See 20 C.F.R. § 404.1527(d)(2).  Even where a treating psychiatrist's

10  opinion is contradicted, the ALJ must provide specific and legitimate reasons for

11  rejecting that opinion, supported by substantial evidence in the record.  See Lester

12  v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  However, the ALJ does not have to

13  discuss all evidence presented.  He is only required to explain why *significant*

14  *probative evidence* has been rejected. See Vincent v. Heckler, 739 F.2d 1393, 1394-

15  95 (9th Cir. 1984).

16          In 2000 Dr. Nguyen diagnosed plaintiff with a Global Assessment of

17  Functioning ("GAF") rating of 45 (AR 301) and a GAF rating of 48 in 2003.  (AR

18  284).  These scores indicate that plaintiff has serious impairment in social or

19  occupational functioning.  In assessing the plaintiff's RFC the ALJ concluded,

20  however, that plaintiff had only mild mental limitations relying on the psychological

21  consultative examination of Dr. Smith who assessed a GAF score of 62 in 2006.

22  (AR 14).

23          The fact that the ALJ did not reference plaintiff's GAF scores from 2000 and

24  2003 when assessing her RFC does not constitute a reversible error because they are

25  not considered significant probative evidence.  See Howard v. Comm'r of Soc. Sec.,

26  276 F.3d 235, 241 (9th Cir. 2002) (finding that GAF scores are not "essential" to the

27  RFC's accuracy).   Therefore, the ALJ was not required to provide specific and

28  legitimate reasons for rejecting Dr. Nguyen's opinions regarding plaintiff's GAF

1    ratings.  See Id. ("[T]he ALJ's failure to reference the GAF score in the RFC,

2    standing alone, does not make the RFC inaccurate.").

3        Moreover, the GAF scores at issue here were not evidence of "changed

4    circumstances;" therefore, plaintiff did not meet her burden of overcoming the

5    presumption of continuing non-disability.

6        The principles of res judicata apply to administrative decisions, although the

7    doctrine is applied less rigidly to administrative proceedings than to judicial ones.

8    See Lyle v. Secretary of Health & Human Servs., 700 F.2d 566, 568 n. 2 (9th Cir.

9    1983).  Thus, an ALJ's findings concerning the claimant's RFC, education, and

10   work experience are entitled to some consideration in subsequent proceedings.  See

11   Chavez v. Bowen, 844 F.2d 691, 694 (9th Cir. 1988).  However, a prior decision

12   that finds a claimant capable of a certain RFC creates a presumption that the

13   claimant continues to be able to work at that level, the presumption of continuing

14   non-disability.  See Id. at 693.  Plaintiff has the burden of proving "changed

15   circumstances" indicating greater disability, i.e., showing that plaintiff's

16   impairments have become more severe since the date of the earlier decision.

17   Brawner v. Secretary of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1987).

18       In the 2006 ALJ Decision, the Commissioner found that plaintiff had the RFC

19   to perform a wide range of medium exertion.  Specifically, she was found to be able

20   to lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six

21   hours out of an eight-hour workday, and sit for six hours out of an eight-hour

22   workday.  (AR 46).  Her mental impairments were found to limit her to simple

23   repetitive tasks that do not involve safety operations.  (AR 46).  In coming to this

24   conclusion the ALJ considered the entire record (AR 45), which undoubtedly

25   included plaintiff's GAF ratings from 2000 and 2003.

26       In the 2008 ALJ Decision it was determined that the only material change in

27   plaintiff's impairments since the 2006 ALJ Decision was the removal of hardware

28   from the claimant's right knee on January 13, 2006.  The evidence supported that

4

after a six-week recovery period the claimant had completely recovered and was able to do medium work. (AR 8). Specifically, the ALJ found that plaintiff was able to lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours out of an eight-hour workday, and sit for six hours out of an eight-hour work day. Her mental impairments were found to limit her to simple repetitive tasks that do not involve safety operations. (AR 11).

To overcome the presumption of continuing non-disability, plaintiff presented the same GAF scores of 45 and 48 from 2000 and 2003, which is not evidence of "changed circumstances" indicating greater disability, but evidence that nothing has materially changed. Therefore, Dr. Nguyen's opinions are irrelevant and the ALJ did not err in rejecting those GAF ratings without providing specific legitimate reasons for doing so.

**ISSUE No. 2:**

Plaintiff alleges that the ALJ failed to consider the opinion of the consultative examiner, Dr. Moore. Specifically, plaintiff alleges that the ALJ erred in not providing specific and legitimate reasons for rejecting Dr. Moore's opinion that plaintiff's workday would be limited to two-hour intervals. Defendant maintains that the ALJ was not bound by Dr. Moore's opinion because it was based solely on plaintiff's subjective complaints of pain, which the ALJ found lacked credibility.

On June 5, 2006, Dr. Moore performed a neurological evaluation of plaintiff and reported:

> [F]rom a neurological standpoint, the claimant's examination is entirely normal. Because [she] complains of right knee pain, she would have difficulty standing and walking for more than six hours out of an eight-hour day in two-hour intervals. She can sit in an unrestricted manner. She can occasionally bend and stoop. She can intermittently lift and carry 50 pounds and more frequently lift and carry 25 pounds. (AR 228).

5

1    In concluding that plaintiff was capable of performing medium

2 work, the ALJ gave "great weight" Dr. Moore's objective findings to the

3 extent that they were consistent with those of Dr. Lorber, the testifying

4 medical expert.  (AR 13-14).  However, the ALJ did not discuss the

5 portion of Dr. Moore's opinion that plaintiff's workday would be limited

6 to two-hour intervals *because she complains of pain*.

7    As with a treating physician, the ALJ may reject the opinion of an

8 examining physician only for "specific and legitimate reasons that are supported

9 by substantial evidence."  <u>Lester</u>, 81 F.3d at 830-31.  However, if a physician

10 relied heavily on the patient's descriptions of pain and other symptoms, but the

11 ALJ has determined that those statements are not credible, he may disregard that

12 opinion.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n

13 opinion of disability premised to a large extent upon the claimant's own accounts

14 of his symptoms and limitations may be disregarded, once those complaints have

15 themselves been properly discounted."); <u>Flaten v. Secretary of Health and</u>

16 <u>Human Servs.</u>, 44 F.3d 1453, 1463-64 (9th Cir. 1995) (finding the opinion of a

17 treating physician "less persuasive" due, in part, to the fact that it was based on

18 the claimant's own reports of the severity of her condition).

19    Here, because Dr. Moore's statements regarding the two-hour limitation

20 were based on the self-reporting of plaintiff, the ALJ was correct to reject Dr.

21 Moore's statement if he found the plaintiff was not credible.

22    In making a credibility determination of the claimant, unless there is

23 affirmative evidence showing that the claimant is malingering, the ALJ's reasons

24 for rejecting the claimant's testimony must be "clear and convincing."  <u>Valentine</u>

25 <u>v. Comm'r Social Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009); <u>Lester</u>, 81

26 F.3d at 834.  If an ALJ finds that a claimant's testimony relating to the intensity

27 of his or her pain is unreliable, he must cite the reasons why he found the

28 testimony unpersuasive.  <u>See</u> <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d

595, 599 (9th Cir. 1999).  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  See Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ provided clear and convincing reasons for determining that plaintiff was not credible as to her claims of excessive pain.  The ALJ concluded that plaintiff was "credible only to the extent consistent with having the ability to perform work within the RFC" determined therein.  (AR 13).  He based this determination on his findings that plaintiff's "testimony at the hearing and her statements of record fail to credibly establish functional limitations greater than those found [t]herein."  (AR 13).  The ALJ "pointed to specific evidence in the record" that undermined plaintiff's claims of excessive pain.  Morgan, 169 F.3d at 599 (finding the ALJ had provided "clear and convincing reasons" for rejecting the plaintiff's subjective complaints because the ALJ pointed to specific evidence in the record in identifying what testimony was credible and what was not).  Specifically, the ALJ pointed out that plaintiff was not taking any prescription pain medications, (AR 12), plaintiff reported that she was able to perform housework, yard work, and use public transportation to run errands.  (AR 12-13).  Further, the ALJ specifically distinguished between what testimony he found credible and what testimony he found unpersuasive stating:

> The [plaintiff] appeared sincere in respect to her testimony on subjective matters such as he existence of pain, and she is credible as to her sypmtomology, but the disabling nature of the impairment does not appear to be fully supported by the objective findings and treatment records.

(AR 13).

Therefore, since the ALJ found plaintiff's complaints of excessive pain lacked credibility, it was proper to reject the portion of Dr. Moore's opinion that relied upon them.

**ISSUE No. 3:**

Plaintiff alleges that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinions of the State Agency's medical consultant, Dr. Naiman, which is evidence that plaintiff is limited to light work. In return, defendant argues that the ALJ was not required to provide reasons for rejecting Dr. Naiman's opinions because other evidence in the record did not support it.

While ALJs are not bound by any findings made by a State Agency medical consultant, they are required to consider those findings as opinion evidence. <u>See</u> 20 C.F.R. § 404.1527(f)(2)(i).  Therefore, being considered opinion evidence, even where it may be contradicted, the ALJ must provide "specific and legitimate reasons" for rejecting the State Agnecy's findings.  <u>See</u> <u>Lester</u>, 81 F.3d at 830-31.  However, the ALJ does not have to discuss all evidence presented. He is only required to explain why *significant probative evidence* has been rejected.  <u>See</u> <u>Vincent</u>, 739 F.2d at 1394-95; <u>see also</u> <u>Seymore v. Apfel</u>, 131 F.3d 152, 1997 WL 755386 (10th Cir. 1997) (finding no reversible error in the fact that the ALJ failed to specifically mention the state agency's opinion in his written decision; the fact that he had considered all evidence in the record was enough for the court to conclude that he had taken the state agency's opinion into consideration); <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."); <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498-99 (10th Cir. 1992) (rejecting the contention that the ALJ did not adequately consider nonmedical evidence of disabling pain; "[t]he ALJ stated that he considered all of the evidence; his reliance on medical findings does not allow us to assume otherwise").

On May 22, 2006, Dr. Naiman opined that plaintiff had exertional

limitations of occasionally being able to lift or carry 20 pounds, frequently lift or carry 10 pounds, and push and or pull ability is limited in lower extremities.  In Dr. Naiman's opinion, plaintiff was limited to light work.  (AR 217-224).  However, relying on the opinions of Dr. Moore, Dr. Lorber, and Dr. Smith, the ALJ concluded that the plaintiff could lift 50 pounds occasionally and 25 pounds frequently and, accordingly, held that plaintiff could perform medium work.  (AR 11-14).

This Court is satisfied that the ALJ did take Dr. Naiman's findings into consideration.  First, at the February 6, 2008 hearing, the ALJ specifically entered Dr. Naiman's report into evidence.  (AR 21).  Second, the ALJ stated in his written opinion that he had carefully considered "the entire record."  (AR 10-11).

Further, Dr. Naiman's findings, even considered as opinion evidence, do not amount to significant probative evidence.  Dr. Naiman did not independently make any clinical findings, rather as a non-treating, non-examining physician, he merely assessed plaintiff's medical records and found that she was limited to light work.  (AR 217-224).  See Andrews, 53 F.3d at 1041 (finding that medical opinions were only substantial evidence if they were based on independent clinical findings); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (The ALJ need not accept medical opinions that are "brief and conclusionary in form with little in the way of clinical findings to support [the] conclusions" drawn).

**ISSUES No. 4, 5 and 6:**

### *Side Effects of Plaintiff's Medications*

Plaintiff alleges that the ALJ failed to give consideration to the side effects of her prescribed medications, which may significantly hamper her ability to sustain full-time employment.  Defendant maintains that the ALJ was not required to consider any side effects because the plaintiff never complained of any.

When assessing the credibility of a claimant's subjective complaints of pain, the ALJ is required to consider the "type, dosage, effectiveness, and side effects of any medication the [claimant] takes . . . to alleviate pain or other symptoms." See 20 C.F.R. § 416.929(c)(3)(iv); § 404.1529(c)(3)(iv). However, because the plaintiff carries the burden to prove that an impairment is disabling, where a claimant does not submit any medical documentation showing that an impairment limits his or her ability to work, it is not error for an ALJ to reject the claimant's allegations regarding that impairment. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Further, the ALJ is not required to consider side effects of medications as limitations on the claimant's ability to work where the claimant fails to report any side effects to his or her physician. See Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that the ALJ's failure to include fatigue as a limitation in the hypothetical posed to the VE was not error where the claimant did not report any side effects of fatigue to his doctors during the relevant period).

As of January 1, 2007, plaintiff was prescribed Zyprexa, Celexa, Buspar, and Cogentin. (AR 345). Citing *WebMD*, plaintiff points out that these drugs *have been known* to cause side effects such as dizziness, drowsiness, nausea, weakness, blurred vision, and headaches. (Plaintiff's Brief at 6). However, plaintiff has never complained of these or any other side effects resulting from her medications, (AR 132, 142), nor has plaintiff's treating psychiatrist ever documented any side effects. (AR 287-297). Further, plaintiff points to no testimony in the record wherein she alleged adverse effects of her medications and plaintiff fails to provide medical evidence that she did suffer side effects from her medications. Therefore, plaintiff failed to meet her burden of proving any disabling side effects, and the ALJ did not err in failing to consider such potential.

1         ***Episodes of Decompensation***

2         During the period from April 19, 2005 to January 23, 2007, Dr. Nguyen

3 discontinued or increased the plaintiff's medications multiple times. (AR 299,

4 345). Plaintiff alleges that the ALJ failed to properly consider these changes in

5 her medication regimen, which may reasonably be construed as episodes of

6 decompensation. Defendant argues that adjustments to plaintiff's medications

7 are not evidence of decompensation and the ALJ was proper to not consider them

8 as such.

9         The ALJ is required to measure the severity of a claimant's impairments

10 according to the functional limitations imposed using four criteria: activities of

11 daily living; social functioning; concentrations, persistence, or pace; and episodes

12 of decompensation. 20 C.F.R. Pt. 404, subpt. P, app. 1, section 12C. Episodes of

13 decompensation are defined as:

14             exacerbations or temporary increases in symptoms or signs

15             accompanied by a loss of adaptive functioning, as manifested by

16             difficulties in performing activities of daily living, maintaining social

17             relationships, or maintaining concentration, persistence, or pace.

18 20 C.F.R. Pt. 404, subpt. P, app. 1, section 12C.4. Also, "[e]pisodes of

19 decompensation may be inferred from medical records showing significant

20 alteration in medication." Id.

21         However, this Court finds it too tenuous to speculate that each time a

22 physician makes a change to a claimant's medication regimen, that claimant has

23 suffered an episode of decompensation. There may be several explanations for a

24 psychiatrist to alter a patient's treatment plan, and without more concrete

25 evidence that Dr. Nguyen changed plaintiff's medication regimen specifically

26 because of exacerbations in symptoms or a loss of adaptive functioning, the ALJ

27 was proper to disregard those changes as evidence of episodes of

28 decompensation.

### *The Hypothetical Question Posed to the VE*

Plaintiff argues that the ALJ failed to incorporate into the hypothetical question all of plaintiff's limitations, and as a result the VE was unable to properly assess the plaintiff's ability to perform and sustain full time employment. Specifically, plaintiff argues that the ALJ failed to include in the hypothetical question plaintiff's six episodes of decompensation and plaintiff's GAF ratings from 2000 and 2003. In response, defendant argues that an ALJ is not required to include in a hypothetical question limitations that are not supported by substantial evidence in the record.

An ALJ must propound a hypothetical question to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations. See Osenbrock, 240 F.3d at 1164-65. The hypothetical should be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).

As discussed above, plaintiff's evidence fails to prove that she suffered from six episodes of decompensation and is too speculative and does constitute substantial evidence. Also, as this Court determined under Issue No. 1 supra, plaintiff's GAF scores of 48 and 49 from 2000 and 2003, respectively, do not constitute substantial evidence. Therefore, the ALJ did not err in omitting these limitations from the hypothetical question he posed to the VE.

12

1

## <u>ORDER</u>

2        For the foregoing reasons, the decision of the Commissioner is affirmed,

3 and the complaint is dismissed.

4 DATED: <u>April 6, 2010</u>

5

6                    _____/s/_____

7                         STEPHEN J. HILLMAN

8                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13